IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESLEY DEAN HESTER,

     Plaintiff,

v.                                                                                           Case No. 2:23-cv-00516 DHU-LF

LEA COUNTY CORRECTIONAL FACILITY
(GEO GROUP) STAFF; NEW MEXICO
CORRECTIONS DEPARTMENT; WEXFORD
HEALTH SERVICES AND STAFF THEREOF,

     Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter comes before the Court upon a Motion to Dismiss by Defendant New Mexico Corrections Department, filed April 4, 2024 (Doc. 29), renewed at Doc. 57. Having reviewed the parties' submissions and the applicable law, I recommend granting the motion in part and denying it in part as outlined below.

**BACKGROUND**

Mr. Hester is an inmate at the Lea County Correctional Facility.[1] Doc. 11 at 2. He seeks damages and injunctive relief under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"), N.M. STAT. ANN. § 41-4-1 *et seq.*, for "cruel and unusual punishment, deliberate indifference, negligence, and denials of due process committed by the defendants." Doc. 11 at 2. The defendants are the GEO Group, Inc. ("GEO Group"), which runs the Lea County Correctional Facility ("LCCF"); individual employees of LCCF/the GEO Group Dwayne

---

[1] Since the filing of his amended complaint, Mr. Hester was moved to the Central New Mexico Correctional Facility in the Long Term Care Unit on or about November 15, 2024, after receiving care from "outside medical facilities" from November 5, 2024, until November 15, 2024. Doc. 91.

Santistevan, Stacy Massengill-Munroe, Keagen Pollard, Rick Condarco, Rachel Gomez, Moriama Valeriano (collectively with the GEO Group, the "GEO Defendants"); the New Mexico Corrections Department ("NMCD"); Wexford Health Services ("Wexford"), the entity that provides medical care at the prison; and Aiste Chamblin, a nurse practitioner who works for Wexford (together with Wexford, the "Medical Defendants"). Doc. 11 at 3–4. Specifically, Mr. Hester alleges that the defendants have withheld medications, water, and medical testing and treatments, which have exacerbated his medical conditions and led to strokes, partial blindness, hearing loss, partial paralysis, and other serious medical consequences. *Id.* Mr. Hester is "wheelchair-bound" and, following the medical complications he cites, is "almost completely incapacitated." *Id.*

## ANALYSIS

NMCD moves to dismiss the case against it because it "does not directly participate in any aspect of the day-to-day operation of the prison" and does not employ any of the nine individuals named in the Amended Complaint. Doc. 29 at 2–3. Because the Amended Complaint "does not allege that any officers, agents, or employees of the [NMCD] directly participated in the alleged violations of [Mr. Hester's] civil rights," and because Section 1983 and the NMTCA do not allow for vicarious liability under the circumstances of this case, NMCD argues that the case against it should be dismissed. *Id.* at 3.

I.     **Section 1983**

Section 1983 allows suits for deprivation of a civil right by a *person* acting under color of state law. 42 U.S.C. § 1983. Supreme Court case law makes clear that a state is not a person, *Will v. Mich. State Dep't of Police*, 491 U.S. 58, 64 (1989), and neither are "arms of the State," *id.* at 70. Therefore, Section 1983 is an inappropriate vehicle for suits against states or arms of the

state. NMCD, as a state agency, is an arm of the state.[2] *See Blackburn v. Dep't of Corrs.*, No. 98-1282, 172 F.3d 62 (Table), at *1. Courts routinely dismiss Section 1983 claims against NMCD for this reason. *See Gatlin v. N.M. Dep't of Corrs.*, No. 1:20-cv-00865-JCH-LF, 2022 WL 392292, at *5 (D.N.M. Feb. 9, 2022) (Fashing, J.); *Aspaas v. N.M. Corrs. Dep't*, No. 1:20-cv-01109-KWR-GJF, 2023 WL 5336932, at *2–3 (D.N.M. Aug. 18, 2023) (Fouratt, J.); *Vasquez v. Tafoya-Lucero*, No. 1:20-cv-00612-RB-DLM, 2023 WL 110974, at *5 (D.N.M. Jan. 5, 2023) (Sweazea, J.); *Bastian v. Rivera*, No. 1:22-cv-00605-MIS-KK , 2024 WL 3688435, at *27–28 (D.N.M. Aug. 7, 2024) (Khalsa, J.). I recommend that this Court do the same.

## II.     NMTCA

The NMTCA grants broad immunity from tort liability for "[a] governmental entity and any public employee while acting within the scope of duty." N.M. STAT. ANN. § 41-4-4(A) (1978). Subsequent sections of the NMTCA waive immunity under specific circumstances. *Id.* A "governmental entity" refers to "the state or any local public body," and a "local public body" refers to "all political subdivisions of the state and their agencies, instrumentalities and institutions . . . ." *Id.* § 41-4-3(B), (C). NMCD, as an agency of the state, is a governmental entity shielded by the NMTCA's grant of immunity. *See Martin v. N.M. Corrs. Dep't*, No. 2:17-cv-00771-MCA-SMV, 2018 WL 1224446, at *5 (D.N.M. Mar. 7, 2018) ("The New Mexico

---

[2] Additionally, any wrongdoing by the individual defendants cannot support a Section 1983 claim against NMCD because "supervisory liability under § 1983 must be based upon active unconstitutional behavior and involve more than a mere right to control employees." *Serna v. Colo. Dep't of Corrs.*, 455 F.3d 1146, 1153 (10th Cir. 2006) (internal quotation marks omitted). That is, the wrongdoing of employees is not automatically imputed to the employer under Section 1983, so even if the individual defendants were acting on behalf of NMCD, NMCD would not be liable for those actions under Section 1983. Rather, a Section 1983 claim against NMCD must allege wrongdoing on the part of NMCD itself, such as a negligent policy or custom—allegations which also could not survive the motion to dismiss because NMCD is an arm of the state and therefore not subject to suit under Section 1983.

Corrections Department is a state agency."). Therefore, for a tort claim to survive against it, NMCD must be subject to a waiver of immunity as enumerated in the NMTCA.

Mr. Hester cites to the waivers in sections 41-4-6 (the "Building Waiver") and 41-4-9 (the "Medical Facilities Waiver"). Doc. 73 at 1–2. The Medical Facilities Waiver does not apply when an independent contractor operates a prison's medical facility. *Bradshaw v. Mgmt. & Training Corp.*, No. 1:22-cv-00139-MIS-LF, 2023 WL 5934397, at *10 (D.N.M. Sept. 12, 2023) (citing cases). Accordingly, I will discuss only the Building Waiver below.

The Building Waiver waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building . . . ." N.M. STAT. ANN. § 41-4-6(A) (1978). NMCD argues that the denial of water and medications, and other denial of rights, "does not imply the negligent operation or maintenance of real property as property." Doc. 29 at 8.

The Building Waiver broadly waives immunity "where due to the alleged negligence of public employees an injury arises from an unsafe or defective condition on property owned and operated by the government," including in "safety policies necessary to protect the people who use the building," as long as it threatens "the general public or a class of users of the building." *Reno v. Bd. of Cnty. Comm'rs for Cnty. of Eddy*, 577 F. Supp. 3d 1204, 1214–15 (D.N.M. 2022) (emphasis omitted). One case, for example, holds that when a detention center ignores an inmate's disclosed medical needs, fails to staff the facility or train its staff adequately to render aid, and fails to enforce the detention center's own policies regarding inmates with medical issues, the facts are sufficient to fall under the Building Waiver because they endanger a class of people in the facility: inmates with medical issues. *Rave v. Bd. of Comm'rs for Cnty. of*

*Bernalillo*, No. 1:17-cv-00636-RB-LF, 2017 WL 3600452, at *10 (D.N.M. Aug. 18, 2017). That is, contrary to NMCD's cursory assertion, lack of access to necessary medical care *can* trigger the Building Waiver under certain circumstances.

Courts look to the factual circumstances alleged in the Amended Complaint to determine whether the Building Waiver is triggered. Mr. Hester claims that NMCD "promulgated a policy of deliberate indifference to [Mr. Hester's] life and health, and promulgated a policy of deliberate indifference to the procedures for reporting incidents and maintaining accountability" by "repeatedly fail[ing] to correct the actions of personnel under [its] authority." Doc. 11 at 8. He claims that, among other wrongs, medical and prison personnel 1) spread false information that Mr. Hester and his cellmate were child molesters and "needed to be gotten rid of," *id.* at 7; 2) deprived Mr. Hester of access to water, a shower, and clean bedding while he was in segregation, *id.* at 7–8; and 3) failed to test or treat Mr. Hester on two occasions when he experienced strokes, *id.* at 8.

Mr. Hester alleges that NMCD failed "to train, supervise, and direct personnel under [its] authority, and promulgat[ed] policies such that the abuses [by the individual defendants] occurred." Doc. 11 at 6. Although the Building Waiver does not apply to negligent supervision claims, *Espinoza v. Town of Taos*, 1995-NMSC-070, ¶ 8, 120 N.M. 680, 683, 905 P.2d 718, 721, "it does apply to safety policies necessary to protect . . . the class of people who use the building," *Enriquez v. N.M. Dep't of Corrs.*, No. A-1-CA-39033, 2022 WL 17413723, at *3 (N.M. Ct. App. Dec. 5, 2022). To sufficiently plead waiver under the Building Waiver provision, the plaintiff must allege "(1) damages resulting from bodily injury caused by the negligence of public employees acting in the scope of their duties, (2) in the operation or maintenance of a premises, (3) which created a dangerous condition, and (4) that posed a risk to the general public

or a class of people who use the premises." *Id.*; *see also Upton v. Clovis Municipal School Dist.*, 2006-NMSC-040, ¶ 8, 140 N.M. 205, 207, 141 P.3d 1259, 1261.

Mr. Hester certainly has alleged damages resulting from bodily injury. *See* Doc. 11 at 2 (alleged wrongdoing "exacerbated my medical conditions, leading to further complications including but not limited to 2 strokes, partial blindness, loss of feeling in my entire right side, partial paralysis, hearing loss, cognitive impairment, severe weight loss, brain damage, and have caused me extreme pain, suffering, and psychological trauma"). Mr. Hester also has alleged that the individual defendants acted within the scope of their duties. He claims that they were working as correctional officers at the time of the offenses, that they purported to be following the orders of the mental health staff by refusing him access to water, that they cancelled his medical appointments, and that various medical staff denied him care. *Id.* at 7–8.

Further, "[t]he 'negligence of employees' can be attributed to negligent employee supervision or training that is part of the operation of the building, provided that the negligence creates a dangerous condition on the premises." *Enriquez*, 2022 WL 17413723, at *3.[3] The allegations here are not of one single instance of negligent supervision under otherwise safe circumstances; rather, they illustrate an ongoing process of either miscommunication or knowing refusal of access to water and clean bedding as well as denial of medical care. *See* Doc. 11 at 6–

---

[3] Negligent supervision alone is insufficient to meet the requirements of the Building Waiver. For example, a safe playground with a safe slide but negligent, inadequate supervision by day camp staff did not lead to a waiver of immunity in *Espinoza*, 1995-NMSC-070, ¶¶ 8, 13, 120 N.M. at 683, 684, 905 P.2d at 721, 722. However, negligent supervision "tied directly to the operation of the [facility]" can meet the requirements of the Building Waiver. *Upton v. Clovis Mun. Sch. Dist.*, 2006-NMSC-040, ¶ 18, 140 N.M. 205, 209–10, 141 P.3d 1259, 1263–64. In *Upton*, a child with asthma was forced to continue exercising in a gym class despite acute medical distress, but the failures were broader than a lack of oversight by one teacher: the child had an IEP addressing the issue, which was ignored, and the school's medical emergency procedures were not implemented after the child began showing signs of distress. *Id.* That is, the school district failed broadly to implement its safety policies before and after the event at issue.

8. The negligent supervision claims are tied to the operation of the facility—turning water on and off, providing bedding to an inmate, and permitting access to medical care. Failure to provide access to water, bedding, and medical care creates a dangerous condition on the premises. *See Upton*, 2006-NMSC-040, ¶ 24, 140 N.M. at 211, 141 P.3d at 1265; *see also Enriquez*, 2022 WL 17413723, at *3 (corrections officers negligently trained to handle fights between inmates creates dangerous condition in a prison for purposes of Building Waiver).

Finally, the alleged negligent supervision posed a risk to the class of inmates requiring medical care and subject to segregation, not just to Mr. Hester. The fact that Mr. Hester's injuries are the only ones discussed in the complaint does not end the inquiry. Rather, in *Upton*, only one student was injured by the school district's "[f]ailure to respond appropriately to an emergency medical situation," but it nonetheless constituted "a potential threat to every student in school because such a situation can occur at any time, regardless of special heath needs." 2006-NMSC-040, ¶ 24, 140 N.M. at 211, 141 P.3d at 1265. Similarly, other inmates at Lea County Correctional Facility may require medical care, access to water while in segregation, and clean bedding. The fact that Mr. Hester was the only one injured does not mean he was the only inmate whose safety was placed at risk by NMCD's alleged conduct.

One further point merits discussion: if a private contractor maintains and operates the facilities, not NMCD, case law suggests that NMCD may not have waived its immunity. *See Bradshaw*, 2023 WL 5934397, at *7. In *Bradshaw*, the amended complaint specifically alleged that a private corporation "operated and maintained [the prison] as a privately-run state prison facility." *Id.* Here, however, no similar discussion of the GEO Group's role exists. Rather, the GEO Group is listed as the entity "employed under contract to act on behalf of NMCD (a state agency) in operation, [sic] and supervision of Lea County Correctional Facility (LCCF)," and

NMCD is listed as the agency "given responsibility by the state for . . . the operation and supervision of LCCF." Doc. 11 at 2–3. All individual defendants are described as acting on behalf of NMCD and GEO at the time of the events giving rise to the Amended Complaint. *Id.* at 3–5. NMCD is described as having a duty to train and correct the individual defendants' actions under its authority. *Id.* at 6, 8. At the motion to dismiss stage, the Court is required to construe the Amended Complaint in the light most favorable to Mr. Hester, and to draw all reasonable inferences in his favor. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). Accordingly, the differences between the complaint here and the one at issue in *Bradshaw* compel a different result; in the absence of allegations regarding the specific purview of the GEO Group and NMCD, the Court will construe the statements about individual employees and the GEO Group acting on behalf of NMCD to indicate NMCD's involvement in the day-to-day operations of the prison. Of course, if discovery or further litigation reveal that this is not true, the Building Waiver may not apply, and the NMTCA claims against NMCD would fail. However, at this stage and subject to the standards of Rule 12(b)(6), I recommend that the Court deny the motion to dismiss with respect to the NMTCA claims.

## CONCLUSION

For the reasons outlined above, I recommend that the Court GRANT in part and DENY in part NMCD's motion to dismiss (Doc. 29). I recommend granting the motion with respect to the Section 1983 claims and denying it with respect to the NMTCA claims. I recommend granting in part and denying in part NMCD's renewed motion to dismiss, Doc. 57, the same way.

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id***. In other words, if no objections are filed, no appellate review will be allowed.**

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE