IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WESLEY DEAN HESTER,

      Plaintiff,

v.                                                                        Case No. 2:23-cv-00516 DHU-LF

LEA COUNTY CORRECTIONAL FACILITY
(GEO GROUP) STAFF; NEW MEXICO
CORRECTIONS DEPARTMENT; WEXFORD
HEALTH SERVICES AND STAFF THEREOF,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
REGARDING WEXFORD DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on Wexford Health Sources, Inc. ("Wexford") and Aiste Chamblin, CNP's ("Nurse Chamblin") (together, the "Wexford Defendants") Motion for Summary Judgment, filed October 4, 2024. Doc. 68. The Wexford Defendants move for summary judgment against pro se Plaintiff Wesley Dean Hester on the ground that that they did not violate Mr. Hester's rights under the Eighth or Fourteenth Amendments. *Id.* at 2. Mr. Hester responds via a series of Memorandum Replies, each incorporated within the others by reference. *See* Docs. 69–75.

District Judge Davis H. Urias referred this case to me "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." Doc. 14. Having reviewed the parties' submissions and the applicable law, I recommend that the Court grant summary judgment in favor of the Wexford Defendants on some of the claims, thereby granting the Wexford Defendants' Motion (Doc. 68) in part for the reasons discussed below.

**BACKGROUND**

Mr. Hester is an inmate at the Lea County Correctional Facility ("LCCF").[1] Doc. 11 at 2. He seeks damages and injunctive relief under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act ("NMTCA"), N.M. STAT. ANN. § 41-4-1 *et seq.*, for "cruel and unusual punishment, deliberate indifference, negligence, and denials of due process committed by the defendants." Doc. 11 at 2. Specifically, Mr. Hester alleges that the defendants have withheld medications, water, and medical testing and treatments, which have exacerbated his medical conditions and led to strokes, partial blindness, hearing loss, partial paralysis, and other serious medical consequences. *Id.* Mr. Hester is "wheelchair-bound" and, following the medical complications he cites, is "almost completely incapacitated." *Id.* More details about the facts surrounding each incident will be discussed as I analyze the different claims; here, I simply identify the allegations at issue.

As against the Wexford Defendants, Mr. Hester brings two counts. First, he claims that they violated the Eighth Amendment by "denying [him] vital medications previously [prescribed] by an actual doctor (MD); by denying [him] any diagnoses, tests, medications, or treatments for effects of extended forced dehydration, parasites from vermin infested bedding, and 2 strokes; by knowingly making false statements about [his] condition to other staff; and by placing [him] in a COVID [quarantine] pod without having COVID." Doc. 11 at 6. Second, he claims that they violated his due process rights under the Fourteenth Amendment by "denying

---

[1] Since the filing of his amended complaint, Mr. Hester was moved to the Central New Mexico Correctional Facility in the Long Term Care Unit on or about November 15, 2024, after receiving care from "outside medical facilities" from November 5, 2024, until November 15, 2024. Doc. 91.

2

[him] access to review [his] medical file[] and by knowingly making false statements about [his] condition to other staff members." *Id.*

He alleges that the following facts in support of his claims:

1. That Defendant Chamblin yelled and screamed at him during an intake review at LCCF, then cancelled all his medications, Doc. 11 at 6;

2. That Defendant Chamblin cancelled a medical appointment that Mr. Hester made with a doctor after Mr. Hester was released from the Restricted Housing Unit, *id.* at 7–8;

3. That on December 18, 2021, Mr. Hester experienced a stroke and sought medical attention, but the nurse on duty struggled to use a device with tangled wires before simply stating that the device was broken and Mr. Hester would be okay, *id.* at 8;

4. That Defendant Chamblin made false statements that Mr. Hester was capable of standing up for count even though Mr. Hester used a wheelchair and could not stand, causing him to be written up, *id.*;

5. That Mr. Hester was placed in a COVID quarantine pod without having tested positive for COVID, *id.*;

6. That Mr. Hester experienced a second stroke and was given no testing or diagnosis and was prescribed only low-dose aspirin, *id.*;

7. That Mr. Hester was denied the opportunity to review his medical file, *id.* at 6; and

8. That Wexford "failed to correct the actions of personnel under [its] authority" and "promulgated a policy of deliberate indifference" to Mr. Hester's "life and health" as well as "the procedures for reporting incidents and maintaining accountability," *id.* at 8.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) allows a party to move for summary judgment, which the court shall grant "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties must provide sufficient evidence "by reference to an affidavit, a deposition transcript or a specific exhibit incorporated" in the party's motion. *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995). That is, the Court will only review the portions of the record that the parties identify: it "will not search the record [without a specific reference] in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Id.* (citation omitted); *see also Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994) (pro se litigants are not excused of their obligation "to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure); *McKinzy v. I.R.S.*, 367 F. App'x 896, 897 (10th Cir. 2010) (requiring pro se litigant, like any other litigant, to cite pertinent legal authorities and record evidence). At the summary judgment stage, "a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

**ANALYSIS**

I begin with a procedural matter before proceeding to the merits of each claim. First, the Wexford Defendants put forth a list of undisputed material facts. Doc. 66 at 5–18. Mr. Hester's response identifies "many questions [the GEO Defendants] have left still unanswered," Doc. 74 at 7–9, but he does not dispute the facts themselves as required by D.N.M.LR-Civ. 56.1(b). The local rules state that "[a]ll material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1(b). Pro se litigants, though "entitled to a

4

liberal reading of their filings," *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010), still are required to comply with the procedural requirements of Rule 56, *Lammle v. Ball Aerospace & Techs. Corp.*, 589 F. App'x 846, 849 (10th Cir. 2014).

Mr. Hester has not used the proper form (i.e., going number-by-number through the Wexford Defendants' facts to indicate which, if any, are disputed) to contest any of the facts that the Wexford Defendants asserted. However, he has raised some arguments regarding missing or contradictory documentation. *See, e.g.*, Doc. 74 at 2. Where Mr. Hester provides citations to the record to contradict a fact that the Wexford Defendants put forward, I recommend considering those facts disputed. Where he does not acknowledge a fact, merely questions it, or states that it is untrue without reference to record evidence, I recommend considering those facts undisputed.

I.  **Defendant Chamblin Yelling and Denying Medication**

Mr. Hester first alleges that during his intake at LCCF in late September 2019, Defendant Chamblin yelled and screamed at him and then cancelled his medications. Doc. 11 at 6. No records exist of this interaction. Records indicate that in September and October 2019, Mr. Hester was administered metformin, acetaminophen, aspirin, minocycline, levothyroxine, Vitamin C, and Vitamin D. Doc. 67-12 at 1, 3, 5, 7, 9. All medications except for the minocycline appear to be labeled "kop" throughout September and October, which the Court understands to mean "keep on person." *See id.* The minocycline appears to have been prescribed on September 22, 2019, *id.* at 5, and appears to have been discontinued on October 22, 2019, *id.* at 7. *See* Doc. 66 at 9–10.[2] No evidence presented by either side shows any interaction with Defendant Chamblin in or around late September 2019.

---

[2] Undisputed Material Facts ("UMF") Nos. 17 and 20 support this statement. Doc. 66 at 9. Mr. Hester has not addressed these assertions of fact or produced evidence to refute them, so I recommend that the Court consider the facts undisputed. However, the medication administration

A party moving for summary judgment may satisfy its burden by demonstrating that the nonmoving party has no evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The Wexford Defendants have alleged that Mr. Hester's allegations against Defendant Chamblin are unsubstantiated, and Mr. Hester has not produced any evidence to substantiate them. I therefore recommend that the Court find that these allegations lack sufficient evidence to support a constitutional claim.

## II.   Defendant Chamblin Cancelling an Appointment

Mr. Hester next alleges that after he was released from the restricted housing unit, he contacted a doctor, Dr. Acharya, to address "medical problems from forced dehydration." Doc. 11 at 7. Dr. Acharya allegedly scheduled an appointment for May 4, 2021, but when Mr. Hester attempted to go to the appointment, he "was told it had been canceled by defendant Chamblin." *Id.* at 8. Mr. Hester cites to evidence corroborating the scheduling of this appointment. Doc. 77 at 2 (citing Doc. 1-1 at 6). But here is no evidence that the appointment was cancelled, that Defendant Chamblin was the one who cancelled it, or that Mr. Hester made "multiple written and verbal requests" for a replacement appointment but was not given one. Doc. 11 at 8.

Inadequate medical care can constitute an Eighth Amendment violation under certain circumstances. For example, "a medical professional may fail to treat a serious medical condition

---

record appears to indicate that Mr. Hester was provided 30 minocycline capsules on September 6, 2019, to keep on his person along with the rest of his medication. Doc. 67-12 at 1. This may be erroneous; on another page of the same document, there is a mark that may indicate that Mr. Hester was administered minocycline on September 22, 2019, but the writing is illegible. *Id.* at 5.

properly"—not by mere negligence, but by deliberate indifference—or "prison officials [may] prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). Mr. Hester's single cancelled medical appointment, scheduled on April 28, 2021, to take place on May 4, 2021, does not rise to the level of deliberate indifference. There is no evidence that the appointment was cancelled at all, let alone by whom or why. I recommend that the Court find that these allegations lack sufficient evidence to support a constitutional claim.

### III.     Mr. Hester's First Alleged Stroke

Mr. Hester alleges that on December 18, 2021, he "had a stroke," so he "went to medical, where the nurse on duty tried to use a device with multiple tangled wires." Doc. 11 at 8. The nurse struggled with the wires for "several minutes," then "gave up, and said 'it must be broke. You'll be okay,' and sent [Mr. Hester] back to the pod." *Id.* Mr. Hester has provided no evidence of these allegations. The Wexford Defendants have provided evidence that Mr. Hester came to medical on December 18, 2021, stating that he thought he had had a stroke. Doc. 67-34 at 1. The nurse reported that Mr. Hester was alert and oriented, that Mr. Hester reported that his left side was numb and that he could not use it and that the left side of his face was numb and drooping. *Id.* The nurse took Mr. Hester's vitals and found that he had elevated blood pressure (198/102), a pulse of 116, a respiratory rate of 18, a temperature of 98.7 degrees, and an oxygen saturation of 97%. *Id.* The nurse stated that Mr. Hester had equal bilateral grips, that his pupils were equally reactive, that he did not have slurred speech or a facial droop or asymmetry, and that he was alert and cognitive. *Id.* The nurse stated that Mr. Hester's "appearance did not match his description." *Id.* She stated that she educated him on the signs and symptoms of a stroke and sent him back to his housing assignment. *Id.*

The only evidence before the Court at this stage indicates that Mr. Hester believed he had a stroke, so he went to medical, where a nurse took his vitals and examined him. The nurse concluded that he did not have the signs and symptoms of a stroke, so she sent him back. This evidence gives no indication of deliberate indifference to Mr. Hester's health and safety. Accordingly, I recommend that the Court find that these allegations lack sufficient evidence to support a constitutional claim.

### IV.   Defendant Chamblin's Alleged False Statement

Mr. Hester alleges that Defendant Chamblin made false statements regarding his ability to stand up for count. Doc. 11 at 8. Specifically, he alleges that on January 2, 2022, he was written up for failing to stand up for count. *Id.* He states that he is "wheelchair-bound" and could not stand, but that the writeups were upheld on appeal because Defendant Chamblin claimed that nothing prevented him from standing. *Id.*

The Wexford Defendants state in their undisputed material facts that "on April 22, 2008, Plaintiff was sent to UNMH physician Joseph Bicknell for consultation and a nerve conduction velocity testing to determine the extent of Plaintiff's neuromuscular status. Dr. Bicknell's report noted that there was no electrical evidence of peripheral neuro-muscular dysfunction." Doc. 66 at 6; *see also* Doc. 67-2 (Dr. Bicknell's report stating the same). They also point to an evaluation on June 3, 2009, in which a physical therapist assessed Mr. Hester and reported that Mr. Hester's subjective complaints did not match the objective findings, and that Mr. Hester may be magnifying his symptoms. Doc. 66 at 6–7; *see also* Doc. 67-4 (physical therapist note reporting the same). Mr. Hester attaches the inmate misconduct report at issue, which states that he "was given multiple directives to stand up for count," but that he "refused and remain[ed] laying down in his bunk." Doc. 69-1 at 8. A witness statement from an officer contains similar information.

8

*Id.* at 9. He also attaches documentation notifying him that he was to appear before the disciplinary/hearing officer on January 7, 2022, *id.* at 10, and the officer's investigation report, which includes a statement by Mr. Hester that "I am in a wheel chair," *id.* at 11. He attaches an email from Defendant Chamblin that states, "Patient's last visit in medical was in 2019. Upon chart review patient has no comorbidities that will prevent him from standing up during security count time." *Id.* at 12. Mr. Hester was found guilty of disobeying a lawful order and sanctioned with a reprimand and a warning, which he appealed. *Id.* at 14. The hearing officer's decision was upheld. *Id.* at 22.

A reasonable jury could not find that this evidence supports a claim of cruel and unusual punishment or deliberate indifference under the Eighth Amendment. Mr. Hester was issued a reprimand and a warning for his failure to stand up at count, neither of which rises to the level of "cruel and unusual." In a cruel and unusual punishment inquiry, "the ultimate constitutional inquiry is directed at whether an unnecessary and wanton infliction of pain has occurred." *DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2001) (internal quotation marks omitted). A reprimand and a warning do not rise to that level.

Nor is there any evidence of deliberate indifference to Mr. Hester's medical needs. For example, Mr. Hester has not alleged that he required a wheelchair and was not given one. In fact, his need for a wheelchair was assessed twice, and both medical providers determined it was not necessary. Further, the amended complaint does not allege that Mr. Hester required a medical accommodation to participate in the count process without standing. His claim is that Defendant Chamblin made a false statement in violation of his Eighth Amendment rights, and that claim is unsupported both because no evidence suggests Defendant Chamblin's statement was false and

9

because nothing about Defendant Chamblin's statement affected Mr. Hester's Eighth Amendment rights.

A reasonable jury also could not find that Mr. Hester was deprived of his due process rights under the Fourteenth Amendment based on this incident. Mr. Hester had a hearing and responded to Defendant Chamblin's statement, and he appealed the decision. Doc. 69-1 at 11, 13–14. "[T]here is no independent constitutional right to state administrative grievance procedures" at all, and when the state provides a grievance procedure, an inmate does not acquire a liberty interest in that process. *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011). In short, this incident does not have a constitutional dimension, and I recommend that the Court find that these allegations cannot support a constitutional claim.

### V.     Mr. Hester's Alleged Placement in a COVID Quarantine Pod

Mr. Hester alleges that he was placed in a COVID quarantine pod "without having tested positive for COVID," and that he was "forcibly kept with inmates who did" test positive "in a cell previously occupied by a COVID patient." Doc. 11 at 8. He points to this experience as an Eighth Amendment violation. *Id.* at 6. He also included a copy of the informal complaint he filed, which reads, "I am being confined in a pod that is infected with COVID. I don't have COVID. I continue to test negative. I did not have COVID when I was placed in here. You are placing my life in danger. This is attempted murder – again!" Doc. 69-1 at 27. The response from the staff member who reviewed the complaint reads, "Per NMCD's directive, inmates in quarantine are required to restart a 10-day quarantine if any one or more inmates within the group test positive." *Id.* Subsequent informal complaints from Mr. Hester ask why he is not being allowed access to his canteen while in the COVID pod, but they do not include responses. *Id.* at 28–29.

The Wexford Defendants do not address these allegations in their *Martinez* report, their motion for summary judgment, or their reply. *See* Docs. 66, 68, 79. However, the evidence Mr. Hester has put forward does not appear to support the allegations. His evidence does not support a conclusion that the Wexford Defendants are in fact the ones responsible for placing him in COVID quarantine or deciding when he was permitted to leave it. Mr. Hester's evidence indicates that it was NMCD's policy that dictated that choice, not Wexford's. Federal Rule of Civil Procedure 56(f) states, "After giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." I therefore recommend providing the parties with notice and an opportunity to respond to the Court's belief that Mr. Hester has no evidence to support his Eighth Amendment claim that the Wexford Defendants placed him in a COVID quarantine pod when he did not have COVID. Mr. Hester's evidence indicating that this was NMCD's policy, not Wexford's (Doc. 69-1 at 27), is undisputed.

### VI.   Mr. Hester's Second Alleged Stroke

Mr. Hester alleges that he experienced "another stroke" on August 16, 2022. Doc. 11 at 8. He states that he "was put in medical seg for 3 days, but no attempt was made at testing or diagnosis. The only treatment given was low-dose [aspirin]." *Id.* He provides a copy of the informal complaint he filed with similar allegations. Doc. 69-1 at 30. The staff response to the informal complaint states, "Inmate was seen by nursing staff daily from time originally brought. On a couple [occasions] you [chose] not to let the nurses assess you and became vulgar. Provider did not feel symptoms warranted higher level of care." *Id.*

The undisputed material facts state that on the date in question, Mr. Hester "presented in his wheelchair outside of the medical satellite and was noted to be verbally incoherent." Doc. 66

11

at 16. A nurse took Mr. Hester's vital signs and noted that his blood pressure was 179/89, so the on-call provider was notified, an EKG was ordered, and various medications—aspirin, Maalox, Clonidine, Nitro, and Vistaril—also were ordered. *Id.* Mr. Hester was placed in medical observation. *Id.* at 17. In Medical Observation, Mr. Hester refused to see the provider, and Nurse Bradshaw visited him to ask him why. *Id.* Mr. Hester "threw the covers back and swung around to sit on the side of the bed, but when he saw Nurse Bradshaw, he grabbed the covers with both arms, turned and laid on his right side, pulled the covers over his head and refused to speak to her." *Id.* Nurse Bradshaw advised Mr. Hester to tell Security to let Medical know if he needed anything, and they would do their best to help. *Id.* Mr. Hester then refused to sign the refusal form for his follow-up appointment with the provider. *Id.* Defendant Chamblin ordered 81 mg of aspirin and 20 mg of Lisinopril daily for 180 days. *Id.* Documentation corroborates these statements of fact. *See* Docs. 67-35, 67-36.

As with Mr. Hester's first alleged stroke, the only evidence before the Court indicates that Mr. Hester believed he had a stroke, so he went to medical, where a nurse took his vitals and examined him. Medicine and an EKG were ordered, and Mr. Hester was kept in medical observation. Mr. Hester refused further medical interventions. This evidence does not show deliberate indifference to Mr. Hester's health and safety.

### VII. Alleged Denial of Access to Review Medical File

Mr. Hester alleges that the Wexford Defendants "den[ied him] access to review [his] medical file." Doc. 11 at 6. He does not discuss any details about this in his factual allegations, nor does he point to evidence supporting this claim. *See generally* Doc. 11; Doc. 69-1. The Wexford Defendants do not discuss this allegation. *See generally* Doc. 68; Doc. 79. Federal Rule of Civil Procedure 56(f) states, "After giving notice and a reasonable time to respond, the court

may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." I therefore recommend providing the parties with notice and an opportunity to respond to the Court's belief that Mr. Hester has no evidence to support his Fourteenth Amendment claim that the Wexford Defendants denied him access to review his medical file.

## VIII. Policy Claims

The United States Supreme Court has held that Section 1983 claims apply to local governing bodies where, "under color of some official policy," the local government causes an employee to violate a person's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692 (1978). The Tenth Circuit has extended the *Monell* doctrine to private defendants in Section 1983 cases. *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003).

The *Monell* claims pertaining to the Wexford Defendants must fail. Section 1983 violations generally, and *Monell* claims specifically, pertain to constitutional violations. *See* 42 U.S.C. § 1983 (addressing person who "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof *to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws*" (emphasis added)); *Crowson v. Wash. Cnty., Utah*, 983 F.3d 1166, 1174 (10th Cir. 2020) ("[A] claim under § 1983 against either an individual actor or a municipality cannot survive a determination that there has been no constitutional violation."). Because I recommend finding that Mr. Hester did not suffer constitutional injuries based on the incidents discussed above, a *Monell* claim cannot survive against the Wexford Defendants for any policies related to those incidents.

## CONCLUSION

For the reasons described above, I recommend that the Court GRANT IN PART the Wexford Defendants' motion for summary judgment. I recommend granting it on all claims against the Wexford Defendants *except* the Eighth Amendment claim regarding the COVID quarantine pod and the Fourteenth Amendment claim regarding Mr. Hester's access to his medical file. For those two claims, I recommend that the Court proceed under Rule 56(f) by providing the parties with notice and an opportunity to respond to the Court's belief that Mr. Hester has no evidence to support these two claims.

It is so ordered.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific. *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court. *Id*. In other words, if no objections are filed, no appellate review will be allowed.**

_____
LAURA FASHING
UNITED STATES MAGISTRATE JUDGE